

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

0-6355

Dear Sir:

Opinion No. 0-6355

Re: Whether gas production
tax under Article 7047b
accrues where (1) pur-
chaser pays producer
for casinghead gas to
keep contract in force
although said gas is
popped into the air; and
(2) where carbon black
plant, under its contract,
paid producer for gas which
it was unable to use and
which in fact was not
produced.

Your letter of September 17, 1946, requests our
opinion on the above matters.

Concerning the first problem, you advise that a
purchaser's contract with the producer obligates him to
take the casinghead gas produced from a lease, or in lieu
thereof, to make payment therefor in order to keep the
contract in force. No pipeline connection is made to the
lease. The producer permits the casinghead gas to be
popped into the air, but the purchaser pays the producer
for said gas in order to retain his contract. You advise
that this is a current problem, requiring an interpreta-
tion of Article 7047b, V. A. C. S., in its present amended
form.

Said Article 7047b, reads, in part, as follows:

"Section 1. (1) There is hereby levied an
occupation tax on the business or occupation of
producing gas within this State, computed as fol-
lows:

"A tax shall be paid by each producer on the amount of gas produced and saved within this State equivalent to five and two-tenths (5.2) per cent of the market value thereof as and when produced; . . .

"In calculating the tax herein levied, there shall be excluded: (a) gas injected into the earth in this State, unless sold for such purpose; (b) gas produced from oil wells with oil and lawfully vented or flared; and, (c) gas used for lifting oil, unless sold for such purpose." (Emphasis ours)

There are two elements essential before a tax levies. In the first place, the tax is a privilege tax which authorizes the producer to engage in the "business" of producing gas. The first element of a taxable transaction is that it be "produced". The second element to make it taxable is that it be "saved".

The gas was produced. Was it saved? Webster's International Dictionary 2nd Ed., among others, gives the following definitions of the word save: "To avoid loss, . . . to avoid or obviate unnecessary expense or waste, . . . to make safe or procure the safety of."

It will be noted that in Section 1, (1) there is only levied a tax on the occupation of producing gas, on the "amount of gas produced and saved." Then, in the same section and same subsection, and in the following sentence, in providing for the method of calculating the tax due, it expressly states that there shall be excluded from the tax levied (that is, the gas produced and saved) "gas produced from oil wells with oil and lawfully vented or flared." Thus we have a legislative declaration in plain and explicit terms to the effect that gas produced with oil is "saved". If it was not saved, there would have been no reason to have excluded same in calculating the tax, as no tax had been levied thereon.

It is therefore our opinion that the legislature in using the word "saved" meant all gas that was produced and actually captured and was in the actual possession of the producer, so he could control its use.

Honorable George H. Sheppard, Page 3

The only remaining question is to determine whether such produced and saved gas was "lawfully vented and flared." Our conservation laws provide that before it is lawful to produce oil from a well, that either the oil-gas ratio be such that it is classified by the Railroad Commission as an "oil well," or the producer actually uses or disposes of the gas produced. If the well is classified as an oil well, then the gas can be "lawfully vented and flared," that is, the well allowed to produce without the gas being used or sold. In the instant case the producer has secured a market for his gas—has actually sold same to a bona fide purchaser. The gas is flared, by reason of the fact that the purchaser has not made a pipe line connection to the well, which he expects to do in the future. Since the purchaser has full ownership and control of the gas in question, it is purely incidental that it is burned on the producer's lease instead of being burned on the purchaser's premises.

In this State occupation taxes are levied and collected as a privilege tax permitting such taxpayer to engage in the profitable business of producing oil and/or gas and the amount of such tax is measured by the benefits derived from the sale or use of the commodity produced. In the instant case the producer received the market value of the gas produced.

It is therefore our opinion that such gas so sold and burned should be taken into account in determining the amount of tax due.

Your second problem involves a gas producing company which has a contract with a carbon black plant in which the carbon black plant is obligated to take a minimum of 30,000 MCF per day and to pay for same a sum equal to 25% of the market value of the carbon black produced from said gas. In the event the carbon black company uses less than said minimum of gas, the contract provides that it shall pay to producer such sum as the producer would have realized had the minimum amount of gas been used.

Your audit of this account covers a period from June, 1942, through October, 1943, during which time the carbon black plant used an average of roughly 10% below the minimum. Under the contract, it paid the producer on the

Honorable George H. Sheppard, Page 4


same basis it would have had it taken the full minimum amount of gas specified. The unused portion of the minimum was never in fact produced. You inquire as to whether the additional payment under said contract should be considered a premium or a bonus.

The 1941 amendment to Article 7047b (Acts of 1941, Ch. 184, p. 269, Art. II) was in effect during the period under discussion. It levied a tax equal to 5.2% of the market value of gas produced and saved, and provided: "The market value of gas produced in this State shall be the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State . . . . In case gas is sold for cash, the tax shall be computed on the producers' gross receipts of such sale; and in case the whole or a part of the consideration for the sale of gas is any portion of the products extracted from such gas, the tax shall be computed on the gross value of the products received plus all other things of value received by the producer, except in case of gas processed by recycling operations."

In W. R. Davis, Inc. v. State, 180 S. W. 2d 429, Judge Critz of the Supreme Court discussed at length the question of market value as defined in the 1941 Act. The Court said:

"It is very evident that the Act does not use the term 'market value' in its ordinary legal sense. This is because Subdivision (1) of Section 1 defines the term. The portion of the Act just mentioned defines 'market value' as 'the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State, . . .' When this definition is read as a whole it is reasonably clear that it contemplates that 'market value' is the price for which the producer sells his gas. This construction of the definition 'market value,' contained in the statute, is the only one that can be indulged in and give any meaning whatever to the statutory definition. The statute says 'market value' shall be 'the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such

Honorable George H. Sheppard, Page 5

gas will reasonably bring if produced and sold',
etc. This definition, read as a whole, and con-
strued from its four corners, means that the total
sale price is the amount on which the tax levied
by this Act must be computed. Any other construc-
tion of this definition would destroy it. This
must be true, because the very statutory defini-
tion adds to the value of the gas the value of
everything that the producer may get for it in
addition to such value. Evidently it was not the
intention of the Legislature to have more than one
standard of value, and such would be the case if
it were held that in some instances 'market value'
in the ordinary meaning of that term is meant,
while in other instances the sale price is meant
if the producer sells for more than the 'market
value'."

The terminology to be applied to the additional
payment, such as whether it is to be denominated a bonus or
a premium, would appear to be of little moment. Certainly
it was a part of the consideration for the sale of the gas
that was actually produced and sold. Presumably the pro-
ducer was unwilling to sell gas below a certain minimum
quantity, and if the carbon black plant desired smaller
quantities of gas, it was still required to pay this min-
imum amount for such gas as it did take. Such additional
payment was a part of the total gross receipts received by
the producer for the sale of its gas.

In the light of the language of the 1941 Act and
of the Supreme Court opinion construing the same, we are
of the opinion that the taxable value of the gas under the
1941 Act was the total amount of money received under the
contract by the producer.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By W. V. Geppert
W. V. Geppert
Assistant

APPROVED DEC 19, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE